please stand, because I will ask you a question.   your question yesterday, what was it? next two cases, people of Bikini vs. the United States 075175 Ismael John et al. vs. the United States 2007-5176 as counsel obviously knows and has requested, we have consolidated argument on these cases and in fact given you extra time frankly I have some doubt whether you need all the time particularly in view of the fact that the cases deal with the same issues and I would suggest that you make your points not be repetitive especially with respect to Mr. Cederbaum who is arguing second and as you can be confident that if you don't use all your time, you will not be penalized for that so let us proceed with Ms. Millett in this Bikini case Thank you Judge Laurie, may it please the court, I'm Patricia Millett I represent the Bikini plaintiffs in this case these individual Bikini landowners for the last 30 years have done everything that the law, the Congress, the courts, and the executive have asked them in their quest to obtain their long-promised compensation for the obliteration, irradiation, and vaporization of their land during nuclear testing in the 1940s and 50s 20 years ago, this court held that those takings claims had to be dismissed and presented instead into a newly created nuclear claims tribunal but in so holding, the court was quite explicit that jurisdiction was withdrawn in this court's words, and I'm quoting in conjunction with the establishment of an alternative tribunal to provide just compensation but wasn't there an agreement in which the government of the Marshall Islands agreed on behalf of its people that no court shall have jurisdiction to entertain any of these claims? There was an agreement in which the court, in which the jurisdictional statement was made in conjunction with this court's words, in conjunction with the provision of a tribunal to provide just compensation the issue in this case is whether that jurisdictional provision continues to operate when the tribunal does not when just compensation is not possible there is no question that just compensation was not provided through that tribunal the Bikini plaintiffs got a little over $2 million on a $560 million judgment Doesn't that issue rest with Congress now? They've gone to Congress and asked for more money and Congress hasn't acted These are Fifth Amendment takings claims which do not, of course, Congress can pass it and if it gives us money tomorrow we will happily dismiss our case if it gives us the just compensation to which we're entitled but it has never been the answer under Fifth Amendment that you can go to Congress and get the money anyone can do that under the First Amendment's Petition Clause That's all But isn't it clear from this agreement that that's what the agreement provides that they go to Congress that there are insufficient funds for the claims that are made to the tribunal the remedy, the relief that is agreed to in this agreement is that they go and petition Congress That's not the agreement this court saw 20 years ago in the Inuitqaq case when it said that the withdrawal of jurisdiction was in conjunction with the provision of a tribunal to provide just... Can we look at this agreement that we have before us now? Yes, absolutely And it's unclear to me, I'm not seeing why clearly the parties in reaching this agreement contemplated that if the funds were insufficient there was relief provided and they did so at the same time removing jurisdiction from the courts I'm sure you disagree with me, so tell me why I'm wrong We have to read the entire agreement We can't just look at one or two provisions in isolation, that's a cardinal rule of statutory construction and this is a statute Fair enough, I don't disagree, I've read the entire agreement And then the entire, and I don't mean to suggest otherwise but the entire agreement is a package deal and that is that there's a tradeoff that the jurisdiction is withdrawn when replaced by an alternative tribunal that's what the Fifth Amendment commands and to say that you can go to Congress too is a truism You could go to Congress whether that provision was there or not It actually reduces their rights because it says we won't entertain your petition for redress of grievances unless there's been unanticipated consequences, but I have never heard, and it would be extraordinary to say that the fact that the First Amendment has a petition clause means that that takes jurisdiction away from courts under the Tucker Act We need to find clear, unambiguous intent to withdraw Tucker Act jurisdiction over Fifth Amendment claims and that's not here because, as this court said 20 years ago, it's a package deal. The withdrawal of jurisdiction comes in conjunction with the provision of an alternative tribunal If that tribunal's not there, if just compensation is not there, there will not be a withdrawal of jurisdiction that operates by itself apart from the rest of the agreement You have to read all the agreement together and if the tribunal's not there, and if you look, Article 10 has the jurisdictional language you're talking about Article 4 says we're taking, if you put them together it says those claims that we just took away in Article 10 are going to this tribunal in Article 4 and it says in Article 2 these claims are going to be paid in full It says in Article 1 this is going to operate in perpetuity It says in the Compact Act itself that this must provide just and adequate settlement Taking all of those together means that if you don't have a tribunal anymore, which is essentially where we are, if there is not just an adequate compensation, and no one thinks that one third of one percent is just an adequate compensation under any scenario then there will not be a withdrawal of jurisdiction. It would be extraordinary to say that the jurisdictional prohibition operates when nothing else in the agreement or compact is. But Article 12 is not conditional. It doesn't say subject to a satisfactory resolution under Article 4 or anything of that nature It's absolute. First of all, we don't read just that provision by itself, and Article 12 refers to Article 10, which talks about a full settlement, and the statute itself tells us what that full settlement is And I'm on page A163 of our appendix here in the Compact Act I'm sorry, excuse me, on page 194. Yeah, but Article 10 says this agreement is full settlement of all claims past, present, future of the government, citizens and I could go on and on, you've read it as I've read it How does a court get around that kind of sweeping language which tells it, it has no business here? There's two steps to that, and the first one is reading it as a whole we look at page 194 where the statute says what it means by full settlement it means just an adequate settlement That is, and on 103 Well, but this agreement constitutes the full settlement and the agreement says this court has no role in that whatsoever No, with respect what it said, and this is what this court said 20 years ago, is that there's no role when there's an alternative tribunal, and we have to read this language as a whole in light of the Supreme Court's unequivocal directives that you have to find, not that you could or even that it's more likely than not that jurisdiction is withdrawn but that Congress took the deliberate unequivocal conscious step of saying Fifth Amendment rights will be taken away and will not be enforced regardless of whether just compensation is provided and I submit that in plenty of other statutes, whether it's the settlement agreement that you had before you in Abrahem Yore which had much more expansive language than this, and you still entertain the takings claim If you look at the language in Dames and More if you look at the language in Blanchette no court shall review everything will go to a special court there shall be no review and the Supreme Court said that's not good enough, unless Congress says the Tucker Act is withdrawn explicitly or explicitly repealed depends upon some kind of ambiguity where's the ambiguity here? the ambiguity here is the same ambiguity this court found 20 years ago when it said you can't read the jurisdictional provisions to negate the rest of the agreement the jurisdictional provisions implement a just and adequate settlement, the jurisdictional provisions are withdrawn in conjunction with the provision of an alternative tribunal for just compensation and the ambiguity is, is that intended to operate exclusive of the existence of this tribunal and its ability to provide just compensation and that is more ambiguity than you had in a case like St. Cyr, where the Congress said 3 or 4 times jurisdiction is withdrawn over habeas, and the courts didn't do that I'm not aware of any court that actually has held and upheld the statute, you look at Boumediene they finally did they take away constitutional right to habeas corpus the courts agree all the way up to the Supreme Court first of all Boumediene suggests there's a complicated area of law here but the constitution itself allows the suspension of habeas corpus it does not allow the suspension of the just compensation clause in that respect and this, well no I don't think anyone's saying the clause has been suspended there's just an argument over whether the just compensation is yet to come or not right? No, because the just compensation to come at Congress's leisure, which may never happen is not the 5th amendment standard that is suspension and displacement of the 5th amendment and to say that the Congress intended here with this ambiguity which is at least as much as St. Cyr as much as Ames and Moore as much as Blanchette as much as Presault as much as Ruffles House is sufficient to allow this court not to impute, it's a lot to put on Congress to say that what it was doing here was erecting an agreement that said we promise just and adequate compensation, but if it doesn't work, we don't care there's still no jurisdiction you can't read the jurisdictional provisions to render the rest of the statute that's your ambiguity and to say that they are to operate in a scenario that we will still withhold jurisdiction when there is no tribunal realize that under the government's reading if someone came up with a new claim today they found another island missing, they would say the court, you have to kick them out of court and tell them to go to that tribunal that has an out of business sign hanging up, I don't see that impelled by the language of the statute could you read it that way? Perhaps but I don't think that's what they're doing keep in mind they were talking about claims in the past that had arisen, it's ordinary if one thinks about arbitration to have sweeping language to send parties for their dispute over the broken toaster to arbitration but if you get there and the arbitrator doesn't show up or is biased or the system breaks down entirely and you go to court to enforce your rights no one looks at the arbitration agreement no matter how sweeping the language and says sorry you just have to stick with what you had there you have a right to enforce your rights particularly the 5th amendment's just compensation clause, this is unique it is a self-executing constitutional right what does that mean? That means Congress cannot by an act of legislation this legislation, it cannot by an international agreement it cannot decide for itself what just compensation shall be. That is a judicial function at the end of the day it's a judicial function. They can set up a procedure and try to provide just compensation and if it works that's fine the court will have no business to do but when it breaks down Why did the State Department recommend that Congress not entertain a request for additional funding? It's a lengthy report I can give you a very quick thumbnail and we can provide the whole report I think parts of it are in our joint appendix but in the thumbnail it was that the money is there and it ran out and that's the end of the story it's more complicated than that because there were arguments about there were changes in the radiation science what happened here was we were learning about radiation as we went along here and it's effect on human beings personal injury plaintiffs got to the tribunal before the ATOLs did and the amount of money required to compensate them on top of a number of other dynamics drained the fund so that when the people with the land takings claims got there there was virtually nothing left to pay them with and part of the problem was that by the time the tribunal adjudicated these things in the 90s and 2000s the science had changed very much from the 70s and 80s on what the effect of radiation is on people and that was the change under which the change circumstances petition was presented to Congress and the State Department said we don't think that's good enough but that's very different from what the Justice Department stood in this court 20 years ago saying and what it told the Supreme Court and what it told the judge in the Judah case about the promises to provide just compensation they would not turn their backs on the Bikinians in their opposition to certiorari they recognized continuing responsibility to assure compensation and this court withdrew jurisdiction on that understanding that there was a promise here and said we will take the government at it's word we will presume it will act consistent with the constitution which is the right thing to do don't we have another problem I mean the party you're suing here is the United States government you can't sue them unless you have a waiver of sovereign immunity they've kind of withdrawn that waiver and they have some justification for doing so how do we get around that how do we get around the political question doctrine even if we do get take your argument on jurisdiction we still have problems don't we no on any of those grounds first of all the withdrawal of jurisdiction is the very question presented here did congress intend as Blanchett requires not that you withdraw in the sense that you say things will go to another tribunal and if it works out that's fine did it withdraw it in the sense that if you go to that alternative tribunal and it does not meet the constitutional standard we are forbidding any court to enforce the constitutional standard and provide the constitutional shortfall and that standard is not met by this language it is not that clear you have to find evidence not that congress could have might have would have under one reading but that congress deliberately consciously and unequivocally prevented recourse to the courts and that's not here when you have a package deal of jurisdiction taken from courts because a new tribunal some people did get compensation from the tribunal right some people did yes some people are unhappy and some people are happy and that's congress's job to decide if they've given adequate compensation not in the least under the 5th amendment's just compensation clause the fact that my neighbor got compensated for the taking of his land or for the physical injuries that he suffered does nothing to diminish my right to full compensation under the 5th amendment perhaps it does when you say by the way I'll take all of my claims to that court over there and write every other claim that I possibly could have off and I say it about 6 times in unequivocal language haven't I kind of agreed that I will go to that court over there first of all none of these argument here that the rights were extinguished or released in any sense what you had was a government to government trust ward agreement here between the Marshall Islands and the United States government and it was not I mean there's 2 answers to that the first one is that agreement by the republic of the Marshall it wasn't a republic but now the republic of the Marshall Islands was not that we will sign things off and we'll see what works the tribunal if nothing happens so well it was as this court said an exchange for a tribunal that will provide just compensation and if it doesn't we will look at this again and that is what they were signing up for was a provision that was consistent with Blanchett which was on the books if congress wanted to say there will be no Tucker Act even if the tribunal collapses and runs out of money and we do nothing about it it could have said so congress told it what it had to say and that language isn't here and you have to read it with that light the second question is there's a substantial question whether the United States government can contract itself out of its constitutional rights in any event these are rights of there's 400 US citizens in my plaintiff class the government as far as I know cannot enter an agreement with any other country in the world sovereign as you want it to be that contracts me out of my entitlement to just compensation wasn't it pretty well understood in 1986 when this compact was entered that 150 million wasn't going to be enough that is what the people of NMWT told this court 20 years ago and what you got in response was and yet you entered into the deal the Marshall Islands entered into the deal this is not a settlement between parties to litigation and it's a substantial constitutional question which again informs your construction here whether the United States can contract itself out I don't think it can enter a contract with Virginia to have a great Medicaid plan under which Virginia says but Patricia Mallette's constitutional rights arise under that plan or in any way related to it are hereby given away Virginia can't do that the United States government can't do that under any circumstances and in particular when it has its own representative obligation to protect the rights of these individuals at that table Ms. Mallette you wanted to save some time and you're well into your rebuttal time do you wish to save it and we'll hear from Ms. Cedarbrown yes I'd like to thank you good morning your honors may it please the court Jonathan Cedarbrown for Ms. Mallette, John et al the people of Eniwetak I'd like to pick up where my colleague Ms. Mallette left off but if I could at the outset I'd just like to draw the court's attention to three significant facts about the situation of the people of Eniwetak all of which indicate how similar their position is to the people of Bikini first of all today more than half of the Eniwetak atoll remains uninhabitable because of the radioactive contamination from the government's weapons test so just as is the case with respect to Bikini's entire atoll so it is with respect to more than half of Eniwetak's atoll for that very reason the Eniwetak people have always alleged takings across at least two time periods 1947 and 1980 and 1980 onward third as Ms. Mallette mentioned at the end so is true with respect to the Eniwetak people 10% of the plaintiff class are United States citizens so they are not foreigners in any sense as they come before the court I'd like to pick up if I may Judge Rader with some of the questions you were asking Ms. Mallette at the end one question you had asked was wasn't it understood in 1986 that the $150 million fund would be inadequate and as Ms. Mallette started to answer it was true that we were concerned that it would not be inadequate and indeed we presented that argument to this court and this court told us it's too soon to tell you have to try it out Congress intended the process to be utilized and it was the U.S. government in its brief to this court and its brief to the Supreme Court that assured the court that the system was intended to provide full funding in its brief to this court 20 years ago it said that the system would provide continuous funding to resolve not evade the just compensation obligations that Congress had recognized in the Compact Act one of Judge Miller's findings is that this claim isn't ripe because Congress could still act yes your honor but we think that was clearly an error if Congress's failure to act could prevent the ripening of this claim then the claim could be kept at bay forever by Congress's failure to act could be but the very nature of the claim we are bringing before the court today is a claim for failure to pay it is by its definition as Monterey and County of Williamson indicated the constitutional violation is to pay once the alternative process the inadequacy of the alternative process becomes apparent and when was that apparent? when did that become apparent? we believe it became apparent at least by 2002-2003 when it was clear that the Nuclear Claims Tribunal as it said in its 2002 payment order which is on I believe a 405 bar appendix said that only token payments were possible at that point and there is no dispute that at this point the fund is empty and if I might add Judge Prose your decision in US v. Hare addressed a similar argument to this ripeness question with respect to Congress in that case it was the plaintiffs who tried to argue that a claim should not be seen as accruing until the government gives some definite no about payment and you said no we are not going to accept that argument you noted that it could be used as a sword by the government as well as by plaintiffs in Hare you said assume plaintiffs argument no cause of action against the government for a taking could accrue until the government gave express notice of its intention not to act could the simple expedient of governmental silence for an indefinite period perhaps forever frustrate a claimants right to sue for a taking address the political question aspects of this address the political question aspects we think it's clear that there is no political question obstacle here we are presenting constitutional claims for just compensation which of course are a traditional realm for the judiciary to determine indeed since the late 19th century the Supreme Court has said again and again it is the obligation of the judiciary to resolve such claims now there is no Baker against Carr the court said that there is only a political question problem if the precise issue that you would have to resolve would intrude on the functions constitutionally committed to another branch and there simply is no intrusion here there is no questioning of the recognition isn't funding something congress does constitutionally isn't that something executive and judicial officers have no authority over I thought that was constitutional law 101 they fund things certainly it's true your honor under article 1 section 9 congress so doesn't Baker v Carr govern no your honor we don't think so we've all agreed the problem here is congress has not yet funded funding is their deal appropriations is their deal not in the case of takings your honor that is just as in any other takings case congress cannot except that you told everyone that you were going to agree with the assignment of these claims to the tribunal they were assigned there you gave up all your rights to any kind of judicial action doesn't that put it squarely then in the congress's ballpark to fund that no your honor we don't think so again for several reasons first of all when you say we agreed my clients did not enter into that and you know the problem with this sort of arrangement as we've seen often is there will always be some part of the Indian tribe who doesn't agree that they were properly treated under the trust arrangements there will always be some claimant that doesn't feel like that they were properly treated but we have to deal with the law and the law that comes to us is this agreement that says you've given up all claims past present future of any variety well your honor what it says is including the espousal provision what it says though again just to be clear first of all with respect as Ms. Millat was indicating 10% of each of the plaintiff classes are United States citizens and it seems in terms of the law another government could settle away United States citizens but please don't ask us to treat United States citizens different than we would treat anyone else we don't in this country we give everyone equal rights and we're not going to treat their rights any different than anyone else well your honor no I agree certainly you're correct in terms of their so why is this a political question why didn't you make it a political question by your agreement and by your reliance on Congress to fund it and funding is a Congressional duty your honor again the Congressional duty to fund which comes in Article 1 of the Constitution does not trump the obligation of the court to order compensation when a valid compensation claim is brought before it but also Congress has done nothing to suggest that it would disapprove of resolution of this litigation indeed in the change circumstances petition the Marshall Islands government indicated in there that its petition was perfectly consistent with this ongoing litigation and that the litigation was an alternative means of seeking compensation what do you mean Congress hasn't done anything to indicate I mean how would they have done that I mean Congress doesn't do any doesn't speak other than through the passage of legislation correct and we all know I mean I don't understand what you would have expected Congress to do or say then well yes your honor I mean they approved the compact they passed the legislation approving the compact and we can argue about whether or not we think that's clear or not but short of that what would they have done other than pass the request that's pending which they haven't done yes your honor but again we the fact that Congress has not acted though does not I think the original question is why that is a political question obstacle and there is only a political question where if some issue this court were to resolve were in some way to invade a function constitutionally committed to another branch there is another political question here and that is the United States government has settled a claim with the Marshall Islands through its executive and functions that makes it isn't that political as well putting placing it outside the authority of the judiciary anyway by its express terms no your honor we don't think so for several reasons first of all if you are referring to Belmont and Pink for example the issue in Belmont and Pink there was the authority of the executive to settle claims with respect to its power to recognize foreign governments there is no question about the recognition of a foreign government here more fundamentally by the way what are you asking us to do you want us to tell Congress to pay you the full amount but doesn't isn't that Congress's again political duty to decide whether it pays the full amount well that is Congress's political duty and what if they say no so why we have fostered an inner branch conflict here not at all your honor which the political question doctrine is designed to avoid just to go back to the executive branch Pink itself resolved on the merits a takings claim Pink you may recall they both involve the Litner and Roloff assignment which was this assignment of claims between the Soviet government and the United States and one of the results of that assignment and that executive agreement was that the United States government was given priority over certain foreign creditors in the assets that were being held by the New York Insurance Commissioner and those foreign creditors claimed that they had suffered a taking and just as you said this court said foreigners you know can bring their claims here now the court rejected the claim on the merits because it said that priority rule did not invade reasonable investment backed expectations it didn't constitute a taking but it adjudicated on the merits no political question obstacle it went ahead and adjudicated the takings question on the merits that's exactly what we're asking this court to do here we're not asking you to look to question that agreement we're asking you to resolve the taking question that results through the operation and partial breakdown of the system with respect to Congress we don't see any difference between this case and an ordinary takings case every time a federal court enters a takings judgment against the United States it is ordering Congress to pay certainly this court would not think that Congress could just ignore the constitutional obligation that lies behind that order to pay and there's no violation of article one whenever a court directs Congress to fulfill its constitutional obligation the only issue is whether whether there has been a taking and then Congress must follow the court's order and again in terms of political question documents Baker against Carr didn't say that it's a political question if some function is assigned to Congress by itself in an agreement it has to be constitutionally assigned to Congress so it's not enough if of course we disagree with that reading of what the settlement was as Ms. Millett indicated we think the scope of the settlement here clearly indicated that Congress intended and recognized that there would be these ultimate just compensation claims if the alternative system did not provide sufficient to fulfill the constitutional obligation but even so we think ultimately Congress has to respond to the directive of this court just as with any other court sounds like you'd like to reserve the rest of your time I would your honor thank you we will keep it for you Mr. Simpson you're in the unusual position of having 40 minutes to argue before the court you think you can keep us there I'm tempted to rest on my waist right now your honor I don't know you've got some questions to answer I think may I may I ask may it please the court the court of federal claims judgment should be affirmed there are of course many issues argued in the briefs in these cases but we would submit your honors that the central jurisdictional issue at hand is relatively straightforward and that is whether Congress has withdrawn the language expressly covers only article 10 and 11 what about a challenge to the adequacy of funding for the tribunal itself which would be under article 4 of this agreement and that apparently this withdrawal of jurisdiction is limited to claims in articles 10 and 11 well yes it does refer to articles 10 and they seem to be talking about a claim that arises under article 4 the sufficiency of the tribunal's funding article 12 references claims described in 11 yes your honor of course the main article there is article 10 and the language there we would submit your honors unquestionably and sufficiently clear and broad to embrace the types of claims they are asserting here with respect to the adequacy of the amounts of the tribunal the heading of that section is all claims yes all claims and of course the language was repeated earlier in the argument past present future which would embrace future challenges to the adequacy of payments under the tribunal process based upon arising under or that in any way are related to what about the argument that this withdrawal of jurisdiction itself is contingent upon a there would be compensation under the alternative tribunal which of course hasn't happened well that's their argument that is a well there is simply no language to support that kind of construction the language in article 12 is just so clear and broad no court shall have jurisdiction over any claims it doesn't say unless unless the tribunal process turns out not to award just compensation what if the tribunal had never convened they just decided well we don't want to do this job they had never convened would there have been a cause of action to compel some kind of action by the tribunal perhaps in the Marshall Islands but not in the United States this was a settlement your honor the United States fulfilled its obligations under the section 177 agreement when it transmitted that payment of 150 million dollars in 1986 the agreement states that right on its face in article 1 so what happened in the tribunal was a matter for the Marshall Islands to address perhaps it could come up in a congressional hearing but as far as the United States courts are concerned what went on in the tribunal proceedings is a matter for the Marshall Islands that tribunal was an establishment of the Marshall Islands legislature it had no jurisdiction of the United States the United States played no role in its proceedings and so if the tribunal simply shut down or was never established as was required under the section 177 agreement that would be a question for the Marshall Islands at the most it could be raised in Congress perhaps for the governments to address government to government negotiations for example the compact has been recently renegotiated in 2004 that kind of issue conceivably could come up you know the RMI or somehow the United States can somehow say we hear that the do something about it so we have to submit your honor that the language here is quite clear and it is unlike the language presented in any of the other cases that plaintiffs have cited Blanchett the statute in Blanchett the regional rail act in fact provided for review in the Supreme Court directly the provision that the panelist council has noted that pertained to no review of certain orders of the special court didn't apply to the issue in that case. That applied to the threshold question whether a bankruptcy proceeding should be pursued in district court or whether it should be transferred to the consolidated litigation under the rail act. Those orders were appealable to the special court and there was a provision that no further review should be had of those. But that wasn't the issue here. The issue in Blanchett was a bankruptcy proceeding that had proceeded down the rail act process and that had challenged the quantum of compensation it received. On those issues the statute provided that review was to be had directly in the Supreme Court which is precisely why the case was there in the Supreme Court. The best case I would say to make the best case for the plaintiffs the strongest case they have cited is the INS v. St. Cyr which unlike Monsanto or Blanchett did contain statutory language that was directed directly at court proceedings. However in that case the Supreme Court held that the language in the statute there referred to precluding judicial review or precluding court review and it reasoned that in that case dealing with a matter of habeas corpus there was a long storied history that proceedings for judicial review. Your opponents have argued that their individual United States citizens they didn't waive their rights and they have a takings claim. That's the first I've heard. The 10% United States citizens is the first I've heard of that assertion in this litigation. They did not make that allegation in their complaints even during the court proceedings below in the court of federal claims when the parties were briefing the issue of whether the Fifth Amendment applied at all to non-resident aliens the plaintiffs didn't make this assertion that some of them are United States citizens. I thought it was included at least in the blue briefs in this case. In this case yes there were general allusion that some of the plaintiffs are U.S. citizens but since it was not raised below it's very difficult to address that. They do not identify who these plaintiffs are. But isn't the Fifth Amendment self-executing anyway? It is self-executing yes your honor but as explained in cases like... And who's going to decide if compensation is just if not us? Well in this case it was the judgment of the political branches and Congress. This was a settlement your honor. There is simply no authority to suggest that it's unconstitutional to withdraw jurisdiction in a circumstance where a class of claims have been The plaintiffs conceded this one. But there's nothing in the compact that suggests that anyone thinks that this $150 million sum is just compensation indeed there's some language to suggest that parties recognized it might not be right? Well to change circumstance provision yes. But section 177 of the compact instructed the parties to negotiate a subsidiary agreement which was in fact negotiated simultaneously to provide for the just inadequate compensation of course that was the 177 agreement which indicates clearly that the parties intended the 177 agreement to provide just inadequate compensation. Now Attorney General Thornburg sent a report in I think it was January of 2003 wasn't it? In which he said it's manifestly inadequate. Why isn't that the government telling us what our duty is? The Attorney General himself is saying it's manifestly unjust to withhold compensation. Attorney General Thornburg was retained as I understand it by the government of the Marshall Islands to conduct that report and as far as I can tell the only basis for that legal conclusion that was rendered was simply because the awards that were made exceeded the remaining in the tribunal funds so it's not as if certainly the Attorney General was speaking for the United States government at that time. He wasn't Attorney General at the time. No, he was a private lawyer retained by the Marshall Islands. So, Your Honors, I would again simply like to say that this case of course involves many difficult issues but really the central issue here is quite straightforward and that is just as this Court and the Claims Court ruled almost 20 years ago the sovereign immunity of the United States has been withdrawn for these claims. Sounds like you're not going to use your 40 minutes. I only have 30 minutes left so Your Honor I will take heed of your admonition at the beginning of the argument to keep the arguments succinct and for these reasons and the reasons stated in our brief, the judgment should be affirmed. We have your position Mr. Simpkin. Ms. Millett has some rebuttal time as does Mr. Cedarbaum after us. Thank you. I'd like to start first of all with this Court's decision in Abrahem Uri where the language was much broader than what we have here. That involved a, after the Algerian Accords there was another Settlement Act and that Settlement Act said that the complete, full final and definitive settlement liquidation and satisfaction of all disputes, differences, claims, clout or claims in matter did you get the point? It was broader than what we have here. This Court entertained a takings claim that arose out of that agreement and challenged that agreement for not providing sufficient compensation and decided it on the merits. The plaintiffs lost but this Court addressed it under Penn Central factors. With language like that jurisdiction was not withdrawn. Was there anything that said courts can't entertain any claims? The purpose of this agreement is to settle, dismiss and terminate definitively forever and with prejudice all the disputes. The agreement I think was more strong than what we have here and as you noted the problem here is Article 4, Article 2. But there's nothing there that says no court of the United States shall have jurisdiction, right? When it says all claims are terminated definitively with prejudice, you can say things different ways. But I don't see Well that's directed to a set of claims and I can imagine that the definition of what those claims are would be something to review. But when you take away the power of a court to even look at it, jurisdiction, that's a little bit more draconian in its remedy, isn't it? That's the language you had in St. Cyr that was not enough to withdraw jurisdiction. No court shall review. But here as you noted, what's withdrawn is jurisdiction over such claims, the terminated claims, the claims being funneled to the tribunal as the just compensation forum. And as you noted, Article 4 talks about distributions and it's specifically contradistinction discusses claims and separately disputes arising under Article 4. Those aren't called claims, those are called disputes arising under Article 4. And I'm on page 232 of our appendix here. It distinguishes and structurally distinguishes the enforcement of Article 10 the obligation to pay in full is under Article 2. The obligation to I'm sorry, the distinction between disputes about Article 2 and Article 4, those are distinguished. So Article 2 and Article 4 are distinguished. Those types of disputes are distinguished. That is certainly enough ambiguity, especially when you add to it reading the agreement as an absolute whole and that it was a trade-off here of just compensation, one just compensation forum for another and no statement. Remember if you find jurisdiction with which it was drawn, the case doesn't end. You then have to decide whether it's constitutional for Congress to do that. We're trying to avoid the constitutional question here. They don't win because of that. They lose then in our view on constitutional grounds, but we don't think the court could do it. We think there's more ambiguity here than in other cases where courts have strained to avoid those constitutional problems. The reading of Blanchett, we respectfully disagree with our opposing counsel. Was there a Supreme Court appellate review over the special courts decision? Yes. The issue in the case is whether you could bring, you can't bring a takings claim for the first time in the Supreme Court unless you're a state. You can't do it as an individual. The question is whether the jurisdiction had been withdrawn when the alternative procedure to which rails were supposed to go to get their compensation didn't work and if enough funding wasn't there, Congress had provided a cap on funding. That doesn't mean no jurisdiction. You may not have noticed that your time has expired. Thank you. We will proceed on Thank you, Your Honor. Just a few points. First, on the point that Ms. Millett mentioned, I just wanted to note another aspect of the language that was at issue in the agreement there. It was not just about a particular set of claims. It also covered in that case the termination of litigational respect. It also covered all claims. There's a big difference between claims and litigation and the jurisdiction of every court in the United States, isn't there? You're a lawyer. You know that jurisdiction is our power. Without power to act, we're not going to quibble about whether a claim was satisfied or define claims or find changed circumstances because we don't even have any power to act. Now, in those other cases, times change, claims change, circumstances change. Courts having the power to look at them can find reasons to go back and reconsider, but that's a lot different from no court of the United States shall have jurisdiction, isn't it? Well, Your Honor, let me... First of all, Your Honor, on the jurisdictional point, and this was another point I wanted to make, you had asked about sovereign immunity and whether sovereign immunity was taken away. I mean, again, one of our principal submissions here, as this court has said again and again, is that Congress does not have control over the waiver of sovereign immunity with respect to just compensation claims. That guarantee is self-executing, as this court said in Hare, for example, again. Sovereign immunity does not protect the government from a Fifth Amendment takings claim because the constitutional mandate is self-executing. As the Supreme Court said in the Baltimore-Ohio Railway case many years ago, the just compensation cannot be evaded or impaired by any form of legislation. You heard when I asked Mr. Simkin if it's self-executing, don't we have to get involved? And what was his answer? His answer was that Congress had withdrawn it, but our point is that Congress cannot. And the executive together by agreement. It's embodied in the Constitution. If I may, I just wanted to make one last point on Abraham-Urey, just in terms of the language, because part of the issue is how to interpret such sweeping language, and Abraham-Urey, the termination language there, included not only the claims themselves, but all claims capable of arising out of the underlying relationships or related to, just as in this case, those claims. Certainly if one would have thought that someone could bring the fallback takings claim in that case, it was just as related to, arguably, as what we have here, but this Court found no bar to hearing those claims. In terms of the issue, though, of the settlement and whether Congress and the executive did something here, I also wanted to note a couple of things, if I may. Again, as we indicated in our most recent 20HA letter, cases like Garamendi and Reed v. Covert make absolutely clear that even when Congress or the executive or Congress and the executive together act, even in the realm of international affairs, they cannot break the individual constitutional guarantees that are embodied in places like the Fifth Amendment. They cannot give themselves powers that exceed what the lines that the Constitution draws are bound, what they can do. More particularly also with respect to the settlement here. But they can limit the Court's jurisdiction to do so, can't they? Not in a way that would evade a constitutional... Tomorrow they can dissolve this Court, and I'm not sure... I've got my salary for life, but I'm not sure what I'll do if they dissolve the Court, but maybe I'll enjoy the rest of my salary without anything to do. But if they can tell me that I can't hear certain cases, right? Not with respect to just compensation claims if they do not provide an alternative mechanism. That is what the self-executing character of the Fifth Amendment means. Congress must, one way or another, fulfill that constitutional obligation. Of course it has chosen to do so by setting up Courts like this one. With respect to the settlement, I just wanted to add also, because there's been a lot of talk about you settle these claims away. Again, our clients did not settle these claims. There was no consented to settlement of these claims. There is no dispute that at the time of the quote settlement here, which was in 1983, even before the Compact Act was enacted and the RMI government gained a different status perhaps. But now we're really into political questions, aren't we, if we're deciding whether a Court can acknowledge actions outside of the scope of one's government. One's government has acted on behalf of one, and now we're going to say, but we'll acknowledge your actions regardless of what your government has done? No, Your Honor. It's not a political question at all, we think, because there's an important distinction between the constitutional power that is committed to the executive of recognizing which government, for example, is the legitimate government of a country like Russia. And in other words, which government is the legitimate government of that country, and therefore that recognition then made legitimate all the actions of that government back to its formation in 1917. But the issue here is not the recognition of which is the government of the Marshall Islands. There's no dispute about that. As many courts have noted, the question here is a different one, and that is, was this entity, the Marshall Islands, in 1983, a sovereign entity that even under the international law notion of espousal and settlement was capable of entering in such agreements? And the trial court, Judge Miller here herself, recognized that that was not a political question, as did Judge Wald and Enflock. It's a pure legal question as whether an entity of this character can enter into such a settlement agreement. And as the courts, the United States courts, that repeatedly looked at the status of the Marshall Islands and its components during the trusteeship period held, that clearly was not a foreign state in the international system. It was not recognized by the United States as such. What do you do with the Mr. Simpkins point from Article 1 that the government of the United States provides the sum of $150 million in fulfillment of its obligations? Well, the United, well, first of all, we, several things. One is there are many other indications in the Compact Act and in the government's briefs to this court that, as this court said 20 years ago, that $150 million was, quote, an initial sum and that the United States Where does it say that in here? In people, I'm quoting from your decision, Your Honor, this court's decision 20 years ago. I'm looking at the binding law here that I have to rule on. Where does it say, I'm not dicta of courts, I'm looking at the law, where does it say here that they didn't settle the matter in full? It was an initial payment, as you say. Well, I think this court correctly derived that conclusion from some of the other pieces of language, like the fact that the Compact Act in Section 177b says that the settlement will be, quote, just and adequate. The fact that Article 2, Section 7 refers to the fact that the awards will be, quote, paid in full. The fact that the government told this court that it was... I still don't see anything about that being an initial sum. Well, if the $150 million proved inadequate to, quote, pay the awards in full, clearly, the $150 million could only constitute an initial sum. But in any case, Your Honor, even if it were the intention of the United States to say that all you get is $150 million and that's that, Congress cannot do so with respect to taking these claims. Ultimately No, my problem is that they didn't just say that. They also said if that doesn't work out, if the award is manifestly inadequate, then here's what you do. You go and you submit a request to Congress. Right? Yes, Your Honor. And on the anticipation that Congress would fulfill its constitutional obligation. But if Congress fails to fulfill that constitutional obligation, the court must eventually step in and make good on it. Again, that is our submission. But where does it say that? It doesn't say, and if Congress fails to act, all it says is it's understood that this doesn't commit Congress to act. But it doesn't go on to say, and if Congress fails to act, the courts get back the jurisdiction we've previously taken from them to hear these taking claims. Yes, Your Honor. But again, we think that obligation that arises from the Constitution itself. It can't be evaded by Congress passing a law. Mr. Simkin could have read to me in addition to Article 1, Article 10, this agreement constitutes the full settlement. The full settlement. This agreement constitutes the full settlement. Yes, and this agreement sets up the entire process that we have here. Well, but that process says the courts aren't involved. It says the tribunal's involved. Or, if it doesn't work, you can go to Congress. But there's nothing that ever says and the courts shall have jurisdiction. In fact, it says they shall not have jurisdiction. But, Your Honor, the system that was set up involved, as you say, the diversion of the claims into the alternative tribunal process on the expectation that that process would provide the constitutionally just and adequate compensation that was required by the Constitution. If that system failed, admittedly there was the fallback through the changed circumstances petition. But our submission is that if there is a failure to pay what is constitutionally due, Congress cannot leave... Can I read one more line? Yes, Your Honor. It is understood that this article does not commit the Congress of the United States to authorize and appropriate funds. Yes. I'm just... You're a lawyer. How do I get around all this language? There is other language... And you just can't say, well, because the Constitution is self-executing. Well, again, we think that in effect, this is an example of Congress trying to legislate itself out of a takings claim. We had takings claims sitting in United States courts, which Congress has, contrary to the Supreme Court's repeated holdings, tried to evade through legislative action. But I would just mention one other part of the agreement. There's another part of the agreement, which is an indemnification provision, which says that if ultimately the United States does get hit with judgments as a result of this, then they can go to the Marshall Islands government to get indemnification, which indicates clearly that the drafters of the agreement foresaw that indeed there might well be ultimate claims that would be brought against the United States. And so, again, that's right in the text of the agreement, I think. Thank you, Mr. Cedarbaum. Your time has expired. Thank you. We thank the pardons for excellent arguments. The cases will be taken under review. Thank you very much. All rise. The honorable court is adjourned until tomorrow morning at 10 a.m.